IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY O'NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 19-03441-CV-S-BP |
| | ) | |
| WARDEN L. MICHELE BUCKNER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Plaintiff, an inmate at the South Central Correctional Center, ("SCCC"), initiated this suit with his pro se Complaint in December 2019, alleging violations of his constitutional rights. He filed an Amended Complaint in January 2020. Defendants filed a Motion to Dismiss. Thereafter, Plaintiff obtained counsel, who filed a Second Amended Complaint, which mooted the Motion to Dismiss. The Second Amended Complaint, (Doc. 26), was filed in May 2020 and is Plaintiff's operative pleading.

Now pending is a Motion to Dismiss filed by all Defendants in December 2020, which seeks dismissal of all of Plaintiff's claims on various grounds. For the following reasons, the motion, (Doc. 38), is granted in part.

## I.  BACKGROUND

Plaintiff was incarcerated at SCCC from approximately April 14, 2019 through August 31, 2019. (Doc. 26, ¶ 17.)  On April 14, he was placed in a "dry cell" because he allegedly "had an open mouth kiss with his wife during a contact visit" and there was a concern that Plaintiff's wife passed him contraband during the kiss. (Doc. 26, ¶ 18.)  "A dry cell is a cell without running water.  It's principally used for prisoners who are suspected of having ingested illegal items,

contraband, which would come out of the body in a bowel movement." (Doc. 26, ¶ 19.) In addition, he was placed "in full leg and arm restraints for seventeen (17) days straight with no break for meals, sleep and/or restroom usage." (Doc. 26, ¶ 20.) While in the dry cell and full restraints for seventeen days, Plaintiff was not able to bathe and "was forced to lay in his own feces and rotten food that was on the floor." (Doc. 26, ¶¶ 22-23.) During these seventeen days "Plaintiff had at least ten (10) bowel movements and . . . no contraband was ever found," (Doc. 26, ¶ 26); in addition, Plaintiff underwent "four (4) x-rays . . . and every x-ray consistently revealed that Plaintiff was not secreting any contraband inside of his body." (Doc. 26, ¶ 27.) Beyond the suffering that he endured during those seventeen days, Plaintiff has suffered permanent damage to nerves in his hands and feet. (Doc. 26, ¶ 29.) And, after the seventeen days were over, "[a]s further retaliatory punishment, Defendant [sic] placed Plaintiff in the administrative segregation unit . . . from approximately May 1, 2019 to August 31, 2019." (Doc. 26, ¶ 34.)

The Second Amended Complaint asserts five claims. Count I asserts a violation of Plaintiff's Due Process rights because he was put in a dry cell and administrative segregation/detention without valid reasons. Count II asserts a violation of Plaintiff's Eighth Amendment rights in connection with the duration and conditions of his placement in a dry cell. Count III asserts a claim of deliberate indifference to serious medical needs. Count IV asserts a claim for failing to train, supervise, or discipline prison personnel, and Count V asserts a claim for civil conspiracy. All five claims are brought pursuant to 42 U.S.C. § 1983.

Counts I, III and V are asserted against the following fourteen Defendants:[1]

- Warden L. Michele Buckner

- Deputy Warden Conrad Sutton

---

[1] There have been numerous discrepancies in the spelling of some Defendants' names; the Court has utilized the spelling from Defendants' motion.

2

- Captain James Brashers

- Sergeant Jacob Conley

- Sergeant (now retired) Sherry Rosenbum

- Corrections Officer Stacey Babayco

- Corrections Officer Darren Cook

- Corrections Officer David Cope

- Corrections Officer Darrel Myers

- Corrections Officer Tylor Norris

- Corrections Officer Victoria Tausend

- Corrections Officer Ruth Williams

- Case Manager Sabrina Cohn

- Case Manager II Richard Hewitt

Count II is asserted against all these Defendants except for Cohn and Hewitt; Count IV is asserted against Buckner and Sutton only. All Defendants are "sued in their individual and official capacities for $2,000,000 in compensatory and an equal amount for punitive damages." (Doc. 26, ¶ 1; *see also* Doc. 26, ¶ 16.)

There are few allegations connecting the events described in the Second Amended Complaint to any particular Defendant. The sole exception is paragraph 28, which alleges:

> At various times during these seventeen days, [Sutton] came inside of Plaintiff's assigned dry cell and told him that he was not going to let [Plaintiff] out of that dry cell until and unless he gave Defendants the contraband. Plaintiff repeatedly told [Sutton] that he could not give him something that he never had. This response only incited anger with Defendant Sutton who would then instruct other co-defendants that Plaintiff was to remain in the dry cell for a longer period of time.

(Doc. 26, ¶ 28.) Other than this paragraph, Plaintiff attributes actions or knowledge to "Defendants" collectively, without specificity or any other basis. For instance, he alleges that:

3

- "Plaintiff informed Defendants on numerous occasions that he was in extreme pain and discomfort . . . but any and all request to have the restraints removed went deliberately unanswered."  (Doc. 26, ¶ 21.)
- While he was in the dry cell, "Defendants did not clean Plaintiff's dry cell or attempt to sanitize it in any way and were further aware of the fact that Plaintiff was living in his own feces and rotten food."  (Doc. 26, ¶ 24.)
- "During this seventeen-day period, Defendants without [sic] medical attention and denied Plaintiff his previously prescribed medication for depression."  (Doc. 26, ¶ 31.)

These are just three examples.  Again, except for Paragraph 28's references to Sutton, no individual Defendant is identified by name as doing or refraining from doing anything alleged in the Second Amended Complaint.

Defendants seek dismissal; they present various arguments that, in concert, would result in dismissal of all of Plaintiff's claims.  Plaintiff opposes the motion.  The Court resolves these arguments below.

## II.  DISCUSSION[2]

Under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]."  *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008); *see also Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[2] For ease of discussion, the Court will not address the arguments in the order in which they were presented by Defendants.

> alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

### A.  Official Capacity Claims

Defendants present two related arguments for dismissal of the official capacity claims. Both arguments stem from the premise – which is agreed to by Plaintiff – that official capacity claims are deemed to be asserted against the individuals' employer. *E.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Here, Defendants' employer is the Missouri Department of Corrections, which is an arm of the State of Missouri. Accordingly, Defendants argue that the official capacity claims must be dismissed because (1) the state is not a person capable of being sued under § 1983 and (2) the claims are barred by the Eleventh Amendment. Plaintiff agrees that he cannot seek monetary damages from Defendants in their official capacity, (Doc. 41, pp. 3-4), but contends that he can obtain equitable relief from Defendants in their official capacities.

Plaintiff correctly observes that § 1983 and the Eleventh Amendment permit a suit against a state official in his or her official capacity to obtain prospective injunctive relief. *E.g., Rowles v. Curators of Univ. of MO*, 983 F.3d 345, 357 (8th Cir. 2020) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Plaintiff argues that he can rely on this principle because he has alleged that Buckner

and Sutton failed to train or discipline SCCC staff and Count IV asserts a claim based on that alleged fact. (Doc. 41, p. 5 (citing Doc. 26, ¶¶ 40, 61-64).) His argument is flawed in several respects. First, he does not seek prospective injunctive relief, (*see, e.g.,* Doc. 26, p. 14), much less allege any facts demonstrating that he is likely to encounter any flawed polices in the future (which is a requirement for obtaining prospective injunctive relief). Second, he does not identify any policies related to training, supervision, or discipline, much less any that are allegedly unconstitutional. Third, Plaintiff relies on cases discussing when a *municipality* may qualify as a "person" within the meaning of § 1983 and may thus be liable for *monetary damages* in accordance with *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978); they have no application here, where Defendant is suing an officer of the State of Missouri to obtain prospective injunctive relief. Finally, to whatever extent Plaintiff's argument is viable, it does not justify the official capacity claims against the other twelve Defendants. For these reasons, all official capacity claims are dismissed.[3]

## B. Absence of Allegations Involving All Defendants

Twelve of the fourteen Defendants – namely, all of them except for Buckner and Sutton – argue they should be dismissed because the Second Amended Complaint contains no allegations (much less allegations of wrongdoing) involving them. Plaintiff argues that his pleadings are sufficient because (1) he named all the Defendants, (2) alleged what all of them did or knew, and (3) filed grievances against all of them. (Doc. 41, pp. 9-10.) But such "group pleading" is insufficient because it does not present facts that demonstrate any particular defendant's liability

---

[3] In connection with this issue (and only this issue), Plaintiff alternatively requests leave to file a Third Amended Complaint if the Court believes the official capacity claims are not sufficiently pleaded. The Court declines this request because (1) it is not clear (and Plaintiff does not explain) how he can successfully plead these claims, (2) the deadline for amending the pleadings expired on October 1, 2020, (Doc. 35, ¶ 4), (3) discovery closes on March 1, 2021, (Doc. 35, ¶ 6), and (4) Defendants raised this argument before the Second Amended Complaint was filed, (Doc. 17, pp. 3-4), so Plaintiff already had an opportunity to address this issue when he filed his Second Amended Complaint.

6

is plausible. *See, e.g., Ventura Vera v. Dewitt*, 417 Fed. App'x 591, 592 (8th Cir. 2011); *C.N. v. Willmar Pub. Schools*, 591 F.3d 624, 634-35 (8th Cir. 2010); *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009). For instance, the Second Amended Complaint contains no specific information about Cope; it does not allege that he did anything in particular or failed to take any action. In fact, other than alleging that he is a correctional officer and a resident of Missouri, (Doc. 26 ¶ 9), the Second Amended Complaint does not mention him.

The Second Amended Complaint does not contain sufficient factual information to make it plausible that these Defendants were personally involved in anything that violated Plaintiff's rights. Accordingly, the Defendants identified as advancing this argument (*see* Doc. 39, pp. 8-9) – Brashers, Conley, Rosenbum, Babayco, Cook, Cope, Myers, Norris, Tausend, Williams, Cohn, and Hewitt – are dismissed.[4]

### C. Qualified Immunity

At this point, the sole remaining Defendants are Buckner and Sutton, and the Court will focus its discussion of the remaining arguments on them. With that in mind, the next argument to address is qualified immunity. "Qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir. 2013). Defendants argue that the Second Amended Complaint does not have "sufficient allegations that his constitutional rights were violated." (Doc. 39, p. 8.) Plaintiff contends that Defendants misconstrue the Second Amended Complaint. As discussed below, the Court agrees with Plaintiff.

---

[4] Buckner and Sutton are not dismissed on this basis because the Motion to Dismiss does not advance this argument on their behalf. (*See* Doc. 39, pp. 8-9.)

Defendants' qualified immunity argument is very short and succinct. Defendants contend that "Plaintiff's allegations are premised on the assumption that Defendants violated MDOC policy. . . . However, a violation of prison policy does not establish a constitutional violation." (Doc. 39, p. 8.) The flaw in Defendants' argument is that the Second Amended Complaint does not equate a violation of policy with a constitutional violation. There are allegations about MDOC policies, (*e.g.*, Doc. 26, ¶ 32); however, properly read, the Second Amended Complaint does not allege that Plaintiff's constitutional rights were violated simply because MDOC policies were violated.

Defendants' argument for qualified immunity depends on a misreading of the Second Amended Complaint, and there is no other argument for qualified immunity for the Court to consider. Therefore, Defendants have not demonstrated that they are entitled to qualified immunity.

### D.  Count II

Defendants' final argument is that Count II fails to state a claim for which relief can be granted. The Court disagrees.

Count II's title states that it is an Eighth Amendment claim alleging "Cruel and Unusual Punishment/Excessive Force." (Doc. 26, p. 10.) Focusing on the "excessive force" aspect of Count II, Defendants argue that there are no facts alleged indicating that they acted maliciously, sadistically, or with an intent to cause harm. *See, e.g., Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (discussing standard for excessive force case in prison setting); *Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) (same). There is no need to address whether this standard applies to an Eighth Amendment claim based on the conditions of confinement, *but see, e.g., Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (condition of confinement claim only requires deliberate indifference

by officials); *see also Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (per curiam), nor is there any need to address the extent to which Count II is an excessive force claim. Accepting that Count II requires allegations demonstrating that Defendants acted maliciously, sadistically, or with an intent to harm, the Court holds that this requirement is satisfied with allegations that Plaintiff was placed in full body restraints and a dry cell with a floor covered in feces and rotting food for seventeen days. The Court's conclusion is augmented by the allegations that (1) Plaintiff was in a dry cell approximately 5.5 times the customary amount of time and (2) independent of MDOC policies regarding the use of dry cells and restraints, the facts demonstrate that well before the seventeen days expired it was clear that Plaintiff had no contraband. These allegations are sufficient to create an inference that Defendants acted wantonly, sadistically, or with an intent to injure.

### III. CONCLUSION

For the reasons stated above, the Motion to Dismiss, (Doc. 38), is **GRANTED IN PART**. All claims against Defendants Brashers, Conley, Rosenbum, Babayco, Cook, Cope, Myers, Norris, Tausend, Williams, Cohn, and Hewitt are dismissed. In addition, all official capacity claims are dismissed. The only remaining defendants are Buckner and Sutton, who remain in the suit in their individual capacities only.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: February 22, 2021  UNITED STATES DISTRICT COURT